**Mariano MONTEGO, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

No. 49S00–8601–CR–11.

Supreme Court of Indiana.

Dec. 29, 1987.

Michael T. Conway, John S. Nimmo, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Appellant Mariano Montego appeals his conviction for dealing in cocaine, a class A felony, Ind.Code § 35–48–4–1 (Burns 1985

Repl.). The trial court sentenced him to thirty years. On direct appeal, Montego raises three issues:

1) Whether the evidence of intent was sufficient;
2) Whether the trial court properly admitted evidence obtained in a search of Montego's home, and
3) Whether the trial court properly instructed the jury.

### I. Sufficiency of Evidence

Montego claims the State failed to prove beyond a reasonable doubt that he possessed cocaine with the intent to deliver, as required for conviction on charges of dealing in cocaine under Ind.Code § 35–48–4–1(2).[1] Montego contends that the State merely proved the presence of cocaine and drug paraphernalia in his apartment.

The State has the burden of introducing sufficient evidence from which the jury can find the existence of each element of the offense beyond a reasonable doubt. *Finch v. State* (1987), Ind., 510 N.E.2d 673. Because intent is a mental state, the trier of fact must usually resort to reasonable inferences based upon examination of the surrounding circumstances to determine whether the requisite intent exists. *Robinson v. State* (1971), 257 Ind. 38, 271 N.E.2d 727.

The evidence at trial showed the Indianapolis Police Department received information that Montego was involved in the sale of narcotics. In early January 1985, IPD officers Tommie Terrell and James Wurz began a three-week surveillance of Montego's apartment. On January 22, 1985, a confidential informant told the officers that he observed cocaine in Montego's home and car. Montego stated the cocaine was for sale, according to the informant. Based on that information, the officers obtained warrants to search Montego's apartment and car, as well as the apartment of his girlfriend.

---

1. "Delivery" is defined as "an actual or constructive transfer from one person to another of a controlled substance, whether or not there is an agency relationship." Ind.Code § 35–48–1–1 (Burns 1985 Repl.)

That evening, the officers observed Montego leave his apartment and drive to various locations throughout the city. Terrell approached Montego's car at an intersection and identified himself as a police officer. Ignoring the officer's request to stop, Montego fled the area. The police apprehended Montego shortly thereafter and arrested him for disorderly conduct. They found no controlled substances in his car or in his girlfriend's apartment.

The officers drove Montego to his apartment, where they found two bags of white powder, weighing 83 grams, on a plate on the kitchen stove. A police chemist later determined that the powder was approximately 39 per cent cocaine; it also contained lactose, a substance commonly used to dilute cocaine. In other areas of the apartment, the officers discovered a bottle of lactose, a triple beam gram scale with cocaine residue on it, and numerous plastic bags with trimmed corners of the type used to package cocaine for individual sale. Officers confiscated $810 in cash found in a jacket and a receipt for a 1978 Trans Am showing Montego had recently paid $2800 for it.

Montego testified at trial that he was keeping the cocaine in his apartment for a friend and that he had saved the money for the car, as well as the $810 in cash, from various odd jobs. Montego did not produce the alleged cocaine owner as a witness, however, and the State produced evidence showing that Montego had generated little income from his sporadic employment.

Montego is correct that the State did not offer direct evidence that he had sold or was planning to sell the cocaine, but circumstantial evidence of possession with intent to deliver is sufficient to support the conviction. Such evidence does not have to overcome every reasonable hypothesis of innocence but need only generate a reasonable inference of guilt. *Mills v. State* (1987), Ind., 512 N.E.2d 846, 848.

■ Possession of a large amount of narcotics is circumstantial evidence of intent to deliver. The probative value of quantity in proving intent increases as the quantity itself becomes greater. *Romack*

*v. State* (1983), Ind.App., 446 N.E.2d 1346. A quantity permitting an inference of predisposition to sell is one which "could not be personally consumed or utilized and therefore of necessity available for delivery." *Voirol v. State* (1980), Ind.App., 412 N.E.2d 861, 864.

In *Thompson v. State* (1980), Ind.App., 400 N.E.2d 1151, the Court of Appeals found sufficient evidence of intent to deliver where the defendant was apprehended with a large amount of heroin. A police officer testified that the quantity was sufficiently large to indicate resale, and an informant gave police information that the defendant was selling narcotics. The defendant also failed a polygraph examination when he indicated he did not possess heroin with the intent to sell and deliver.

With the exception of the polygraph examination, similar evidence was presented in this case. Testimony showed that the street value of the cocaine found in Montego's apartment was between $8200 and $18,000. Terrell testified that a cocaine dealer generally weighs the cocaine in grams and places it in plastic bags with trimmed corners before selling it. Cocaine is normally sold in one-half and one gram amounts, according to Terrell, and a cocaine addict would typically use no more than two grams daily. Terrell testified that two grams of cocaine would cost about $240. This evidence was sufficient to create a reasonable inference of intent to deliver.

Together with this inference, the jury was presented with evidence directly contradicting Montego's claim that he had saved his recent large supplies of cash from odd jobs. The presence of the paraphernalia used to package and sell cocaine —the plastic bags and the accurate scale— was other circumstantial evidence of intent. Last and most important, the informant specifically told police that Montego, in the informant's presence, indicated the cocaine was for sale. This evidence was sufficient to support the jury's determination that Montego possessed cocaine with the intent to deliver.

## II. Probable Cause to Search

 Montego appears to claim the confidential informant was an agent of the State and his entry into Montego's home was not consensual. Thus, Montego claims the informant's entry constituted a warrantless search in violation of the Fourth Amendment. He also argues the confidential informant's observations upon which the affidavit of probable cause was based could not support the issuance of a valid search warrant. Montego concludes that the search conducted pursuant to the warrant was therefore constitutionally defective, rendering the evidence seized inadmissible at trial.

The accused has the burden of showing that the information in the affidavit of probable cause supporting a search warrant was the product of illegal police activity. *Powers v. State* (1982), Ind., 440 N.E. 2d 1096. Although Montego notes that the informant had been used by police in about 50 cases, he fails to provide any evidence that the informant was contacted by police about the investigation of Montego before the informant entered Montego's apartment. Moreover, the record is void of any evidence that the informant's entry was non-consensual. Thus, Montego has failed to meet his burden, and his claim must fail.

## III. Instructions

 Montego claims the trial court erred in giving four instructions. He first claims that the trial court improperly instructed the jury on accessory liability because the trial evidence showed he was either innocent of any wrongdoing or guilty as a principal. When the accused is charged as a principal, a jury may be instructed concerning an accessory if there is sufficient evidence to support the instruction. *Laird v. State* (1985), Ind., 483 N.E. 2d 68. Montego asserted that he was keeping the cocaine for a friend, and the evidence at trial clearly showed that he at least was helping to sell the drug. Thus, the instruction on accessory liability was properly given.

Montego next claims that the trial court improperly instructed the jury on the definition of "delivery" and "possession." Montego claims that there was no evidence of delivery and that he was not charged with possession. He is incorrect. He was specifically charged with possession of cocaine with the intent to deliver. The trial court has the discretion to give instructions including definitions. *Blackmon v. State* (1983), Ind., 455 N.E.2d 586. These two instructions accurately stated the law on matters which were at issue before the jury.

Montego's last claim of error concerns Instruction No. 12, which defined "constructive possession." He claims that instruction had already been covered by the instruction defining "possession." Though these instructions were somewhat similar, each defined a different concept relevant to the crime charged. The trial court did not err by giving the instruction.

The judgment of the trial court is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.