Arnold MAURICIO, Jr.,
Petitioner–Appellant,

v.

Jack R. DUCKWORTH, and Indiana Attorney General, Respondents–Appellees.

No. 86–1842.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 17, 1987.

Decided Feb. 10, 1988.

Rehearing and Rehearing En Banc
Denied April 12, 1988.

Mara S. Georges (Law Student), for petitioner-appellant.

Michael A. Schoening, Deputy Atty. Gen., Indianapolis, Ind., for respondents-appellees.

Before BAUER, Chief Judge,
COFFEY, Circuit Judge, and PELL,
Senior Circuit Judge.

PELL, Senior Circuit Judge.

Petitioner-appellant, Arnold Mauricio (hereinafter Mauricio), appeals from the district court's order denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Although the district court agreed with Mauricio's claim that the State's knowing failure to disclose the identity of an alibi rebuttal witness was a violation of due process, the court nevertheless concluded that the prosecution's transgression amounted to harmless error. *Mauricio v. Duckworth*, 633 F.Supp. 1302 (N.D. Ind.1986).

### I.

Mauricio is presently serving a determinate 30–year sentence at the Indiana State Prison after being convicted by a jury of aiding felony murder and robbery. These convictions were affirmed on appeal by a 3–to–2 vote of the Indiana Supreme Court. *Mauricio v. State*, 476 N.E.2d 88 (Ind. 1985).

The underlying facts of Mauricio's crimes as fairly established by evidence at trial are as follows. On February 3, 1982, at approximately 8:00 p.m., Nancy Rehm, the decedent, and two other students at the Indiana Institute of Technology in Fort Wayne, Rhonda Unverferth and Joann Wenning, were stopped and ticketed by a policeman for driving snowmobiles in the street. Having been ordered by the officer not to drive farther in the street, the young women dismounted their vehicles and waited for Nancy's father, whom they had phoned, to retrieve both them and their snowmobiles. Suddenly, the students were approached by Mauricio's brother, Mark, and by a taller man alleged to be the petitioner, Mauricio. This second individual was never positively identified by the women due to his having worn a ski mask which covered his entire face. The women declined to enter into conversation with the men, who then approached the snowmobiles and instructed the women to start the vehicles. The women refused. Mark and Nancy then commenced pushing one another upon which Mark pulled a gun and fired a single shot into the ground. While the other students ran for help, two more shots rang out, causing Rhonda to return to the scene where she observed Mark still struggling with Nancy. Meanwhile, the individual accompanying Mark got onto one of the snowmobiles and drove away. Rhonda attempted to give chase but to no avail. Upon returning to the scene, Rhonda found Nancy lying face up in the middle of the street. Mark, while nowhere in the immediate vicinity, was quickly apprehended a few blocks away and positively identified. Nancy Rehm died the next day as the result of a single gunshot wound to the head.

At roughly 9:30 p.m., shortly after the third student, Joann Wenning, returned to the crime scene, a Fort Wayne policeman, Robert Lalone, was riding in a tow truck responding to snow emergencies when he observed a young man riding his snowmobile in the street. As yet unaware of the shooting involving Nancy Rehm, Lalone ordered the young man to get off the street. Three or four minutes after Lalone left the scene of this encounter, he received word over his radio of the shooting. The next morning, the snowmobile taken by Mark's confederate was located on the same street and within one block of petitioner Mauricio's house. Lalone subsequently identified Mauricio as the driver of the snowmobile he had stopped.

Both brothers were eventually indicted and tried together; their appeals from conviction were considered, and narrowly affirmed, in a single opinion by the Indiana Supreme Court.

After being formally charged but before trial, Mauricio filed with the trial court a motion for discovery which requested the names and addresses and prior statements of the witnesses the State intended to call at trial. The State filed a similar discovery request which sought, in addition, disclosure of any defenses Mauricio intended to use. Pursuant to the trial court's discovery order, Mauricio responded to the State's disclosure requests first on May 10, 1982, with a list of his potential witnesses and then on June 28, when he notified the State of his intention to rely upon an alibi. The State did not initially respond to Mauricio's discovery requests, but after two motions for the imposition of sanctions, the prosecution filed a response listing the names of some 59 potential witnesses. The name of the alibi rebuttal witness the State intended to call in the event Mauricio presented his alibi, however, was deliberately omitted from the State's witness list.

Trial commenced on November 16, 1982, and, consistent with his stated intention, Mauricio proffered an alibi based upon the testimony of Janice and William Tuttle and their daughter Lisa Michaels, all of whom had been named on Mauricio's witness list. The Tuttles each testified that at the time of the crimes with which Mauricio was charged, they had observed him at the residence he shared with their daughter. Lisa Michaels corroborated her parents' testimony. At the conclusion of Mauricio's case, the State called its previously unidentified witness, Sharon McDonald, to rebut the alibi offered by the defense. McDonald, who was flown back to Indiana by the prosecution from her new home in California, testified that the Tuttles' testimony placing Mauricio at home at approximately 9:20 p.m. on February 3 was false and that she had been present at a discussion between Lisa Michaels and Janice Tuttle during which they agreed to testify falsely in support of Mauricio's alibi. On cross-examination, McDonald admitted that she was first contacted by the prosecution concerning her willingness to testify as early as June of 1982, five months before trial and a full month before the State tendered its witness list.

Mauricio moved to have the testimony of Sharon McDonald stricken from evidence or, alternatively, for a mistrial on the grounds that the State's use of McDonald's testimony violated the discovery order and constituted a violation of due process. The State responded by arguing that it had no obligation to divulge the identity of its rebuttal witnesses. The trial court denied both of Mauricio's motions. On appeal to the Indiana Supreme Court, a 3-to-2 majority held that because the scope of Mauricio's witness discovery request was unclear and because Mauricio had failed to request a continuance to enable him to investigate and possibly impeach the testimony of McDonald, there was no error upon which to base a reversal of the trial court. *Mauricio v. State*, 476 N.E.2d at 94.

With no further recourse available to him in Indiana,[1] Mauricio filed the instant habeas petition in federal district court in September 1985. The district court denied the petition on May 2, 1986, concluding that, although the State's failure to provide the defense with the identity of its alibi rebuttal witness had deprived Mauricio of his right to due process,

> [t]here does not exist a substantial possibility that the error complained of affected the verdict or that the error denied the petitioner a fundamentally fair trial. The error was harmless beyond a reasonable doubt.

*Mauricio v. Duckworth*, 633 F.Supp. at 1311. On appeal, this court is presented

---

**1.** In addition to direct appeal, Indiana permits collateral review of convictions by resort to its Post–Conviction Remedy Rule 1. Accordingly, allegations that a defendant was convicted in violation of the Due Process Clause of the Constitution must ordinarily be brought in state court pursuant to Post–Conviction Rule 1 before the doctrine of exhaustion of state remedies will permit the filing of a petition for a writ of habeas corpus in federal court under 28 U.S.C. § 2254. However, where, as here, the grounds asserted for habeas relief are identical to the contentions urged in Mauricio's unsuccessful direct appeal to the Indiana Supreme Court, we have previously held that no useful purpose is served by requiring resort to Post–Conviction Rule 1 as a condition of exhaustion. *See Montes v. Jenkins*, 581 F.2d 609, 611 (7th Cir.1978).

with two questions: First, was the State's knowing failure to divulge the identity of Sharon McDonald as a potential alibi rebuttal witness a violation of due process? Second, if so, was the district court correct to conclude that that constitutional violation was, on these facts, harmless?

## II.

■ In *Wardius v. Oregon,* 412 U.S. 470, 93 S.Ct. 2208, 37 L.Ed.2d 82 (1973), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment forbids enforcement of alibi rules unless reciprocal discovery rights are given to criminal defendants. *Wardius* involved Oregon's criminal pre-trial discovery procedures, which required a defendant to provide the prosecution with notice of any alibi upon which the defendant intended to rely, as well as with the names of any and all witnesses who would testify in support of such an alibi. The Oregon discovery scheme contained no reciprocal provision requiring the State to divulge the identity of witnesses it planned to call to refute a proposed alibi. Because of this disparity, the Court in *Wardius* reversed the conviction of the petitioner, concluding that it was a violation of due process to compel a defendant to reveal the particulars of his alibi defense without giving him an equal

opportunity to discover the State's rebuttal witnesses. *Id.* at 479, 93 S.Ct. at 2214.

This court has previously determined that the scheme at issue in the instant case, unlike the statutory procedure in dispute in *Wardius,* is not unconstitutionally nonreciprocal on its face. *See Bruce v. Duckworth,* 659 F.2d 776, 782 (7th Cir.1981). Indiana's criminal discovery procedure neither requires the defense to list the witnesses it expects to call in support of its alibi, *see* I.C. § 35–36–4–1,[2] nor compels the State to enumerate its alibi rebuttal witnesses, *see* I.C. § 35–36–4–2.[3] While acknowledging the constitutionality of and the reciprocity inherent in Indiana's alibi discovery scheme as enacted, the district court found nevertheless that the discovery procedures were not applied evenhandedly in Mauricio's case. Thus, although the relevant Indiana alibi statutes do not explicitly impose upon parties an affirmative obligation to disclose alibi and alibi rebuttal witnesses, the district court found that, in the circumstances presented by this case, the trial court's discovery order requiring the defense to list *all* its witnesses should have triggered a corresponding and reciprocal obligation on the part of the State to list *all* its potential witnesses—including likely rebuttal witnesses.[4] In the opinion of Judge Sharp, the trial court's failure to require the State to divulge the identical

---

**2.** Indiana Code § 35–36–4–1, the wording but not the substance of which has been amended since Mauricio's indictment, requires defendants who intend to offer evidence of an alibi to abide by the following procedure:

Whenever a defendant in a criminal case intends to offer in his defense evidence of alibi, the defendant shall … file with the court and serve upon the prosecuting attorney a written statement of his intention to offer such a defense. The notice must include specific information concerning the exact place where the defendant claims to have been on the date stated in the indictment or information.

**3.** In the appropriate circumstances, pursuant to I.C. § 35–36–4–2, (also modified slightly since the date of Mauricio's indictment) the State's responsibility in response to a defendant's notice of alibi is as follows:

(a) When a defendant files a notice of alibi, the prosecuting attorney shall file with the court and serve upon the defendant, or upon his counsel, a specific statement containing:

(1) The date the defendant was alleged to have committed the crime; and

(2) The exact place where the defendant was alleged to have committed the crime; that he intends to present at trial. …

**4.** The State argues that the extent of pre-trial disclosure required of each party should be determined by the scope of each side's actual discovery requests. In this case, the State makes much of the fact that it expressly requested of Mauricio the names of witnesses the defense intended to call for direct *and* for impeachment testimony, while Mauricio's discovery request merely sought the names of witnesses the State intended to call with no specific reference to rebuttal witnesses. The State's argument, in our view, misperceives the essential nature of the discovery process inasmuch as it portrays discovery as a sort of contest rather than as a level playing field where rules are in place to ensure *equal* access to material information instead of to encourage deftly worded motions in an attempt to outmaneuver the other side.

information it required from the defense altered the balance struck by the statutory discovery provisions and created instead the same type of nonreciprocal discovery scheme held unconstitutional by the Supreme Court in *Wardius.*

██ The State argues that its failure to disclose the identity of McDonald did not amount to a deprivation of Mauricio's right to due process. First, the State asserts that the voluntary disclosure by the defense of its alibi witnesses should not give rise to any corresponding obligation on the part of the prosecution to divulge the identity of its alibi rebuttal witnesses—especially when the State is under no such statutory duty.[5] Second, the State contends that it should not have had to identify explicitly its alibi rebuttal witness because, rather than expressly identifying its own alibi witnesses, the defense merely included the names of its alibi witnesses in the list of witnesses submitted pursuant to the trial court's discovery order. As the district court correctly concluded, neither of these arguments is persuasive.

██ As an initial matter, Mauricio did not voluntarily reveal the names of his alibi witnesses; instead, in abiding by the letter and spirit of the trial court's discovery order, the defense produced "... the names and last known addresses of persons [it] intend[ed] to call as witnesses whether for direct testimony or impeachment pur-

poses...." Compliance with the trial court's discovery order is clearly not the same as a gratuitous disclosure by Mauricio of the identity of his alibi witnesses. Moreover, it is precisely because the disparity in the scope of discovery permitted each side resulted from the trial court's discovery order, rather than from some spontaneous act on the part of the defense, that the fairness of Mauricio's trial is called into question and a violation of due process arises.[6]

██ The State's alternative claim, that it should be altogether excused from having to disclose the identity of its alibi rebuttal witness because Mauricio did not specifically identify his alibi witnesses, is similarly unpersuasive and fails to appreciate the precise degree of reciprocal discovery required by *Wardius.* The district court decision is devoid of language suggesting that the State was required to underscore the particular identity of Sharon McDonald as an alibi rebuttal witness. The State was obliged simply to include McDonald's name in its witness list, in the same fashion that Mauricio provided the names of his alibi witnesses, leaving it to the industriousness of the defense to discern through investigation the nature and substance of McDonald's probable testimony. In these circumstances, reciprocity dictated only that the defense be entitled to the same scope of discovery to which the prosecution was en-

---

5. The fact that the State is not expressly required by statute to disclose the identity of its alibi rebuttal witnesses is not, in and of itself, dispositive of the State's discovery responsibilities. As this court has previously held:

   *Wardius* makes clear that any procedure denying reciprocal discovery rights ... whether expressly pursuant to a statute *or judicially created,* fails to satisfy the due process requirement of the Fourteenth Amendment.

   *United States ex rel. Veal v. DeRobertis,* 693 F.2d 642, 647 (7th Cir.1982) (emphasis supplied). Of course, in the instant case it is not the alibi statute that is nonreciprocal but rather the application of the statutory scheme by the trial court.

6. That the trial court improperly applied the State's discovery rules does not, without more, amount to a violation of fundamental fairness rising to the level of an infringement of due process. What makes the procedural error one

of constitutional dimension is that the failure of the trial court to order disclosure of the identity of *all* of the prosecution's witnesses, including, if any, alibi rebuttal witnesses, deprived the defense of critical information it was entitled to have and to consider in making the strategic decision whether or not to present an alibi defense.

   Furthermore, both the Indiana Supreme Court majority and the district court contend that since Mauricio failed to request a continuance in order to investigate the credibility of the State's surprise witness, he cannot now seek to have the withholding of that witness' identity declared a violation of due process. We disagree. Mauricio should have had the opportunity *pre-trial* to make a fully informed decision as to whether or not to put on an alibi defense. In the circumstances presented by this case, Mauricio's decision should have been informed by timely consideration of the existence of any prosecution alibi rebuttal witness.

titled, nothing less, nothing more. Because the trial court's discovery order, in effect, permitted the State access to information it did not also afford Mauricio, full reciprocity, as mandated by *Wardius*, cannot be said to have characterized the discovery process and consequently due process was denied.[7]

Finally, with respect to the question of a due process violation, we take exception to the State's assertion at oral argument that a decision to grant Mauricio's petition for a writ of habeas corpus amounts to letting a guilty felon "escape justice" by means of a "fabricated alibi." This charge is all the more remarkable coming as it did on the heels of a candid, if extremely reluctant, admission by counsel for Indiana that, in his opinion, the State's knowing failure to disclose the identity of Sharon McDonald as a potential witness was a violation of the State's discovery rule. Certainly, we cannot say from our vantage point whether or not Mauricio's alibi was true. Neither can we be confident, especially in light of the State's deliberate sandbagging, that the jury was in any position to evaluate impartially the veracity of the proffered alibi. What we can say with certainty, however, is that pretrial disclosure of McDonald's existence as a potential witness would have afforded the defense ample opportunity, pursuant to Indiana's rules of criminal procedure, to depose her and to prepare in an orderly fashion for her possible cross-examination. Thus, the plainly prejudicial effect of the prosecution's deliberate decision to omit the name of Sharon McDonald from its witness list requires that we do more than simply conclude that Mauricio should have resorted to the procedural remedy of seeking a continuance in what would have been a desperate attempt, apparent to the jury, to mitigate the damage inflicted by the devastating rebuttal testimony of the State's surprise witness.

### III.

■ Notwithstanding its finding that the State's procedural error violated Mauricio's constitutional right to due process, the district court went on to hold that that error, when viewed in the context of the trial record as a whole, was "harmless beyond a reasonable doubt." *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). We disagree.

In *United States ex rel. Savory v. Lane*, 832 F.2d 1011 (7th Cir.1987), we held that in assessing whether errors of constitutional magnitude, such as the one at issue here, are harmless beyond a reasonable doubt, "we must determine 'whether there is a reasonable possibility that the [errors] complained of might have contributed to the conviction.' " *Id.* at 1019 (quoting *Fahy v. Connecticut*, 375 U.S. 85, 86–87, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963)). In essence, the inquiry comes down to the question, "whether absent the constitutionally-forbidden evidence, honest and fair-minded jurors might very well have brought in not-guilty verdicts." *Burns v. Clusen*, 798 F.2d 931, 943 (7th Cir.1986) (citing *Chapman*, 386 U.S. at 25–26, 87 S.Ct. at 828–29). Typically, we require other evidence of guilt to be "overwhelming" before concluding a constitutional error was harmless. *Savory*, 832 F.2d at 1020; *United States v. Shue*, 766 F.2d 1122, 1132–33 (7th Cir. 1985); *United States ex rel. Burke v. Greer*, 756 F.2d 1295, 1302 (7th Cir.1985).

Any recapitulation of the evidence adduced at Mauricio's trial must begin with an acknowledgment that, as the Indiana Supreme Court stated, evidence of Mauricio's identification was "circumstantial." 476 N.E.2d at 91. In fact, neither of the witnesses to the crimes for which Arnold Mauricio was convicted could positively identify him as having been at the crime scene. Whoever accompanied Mark Mauricio on the night of February 3, 1982 was wearing a ski mask. If this fact alone

---

**7.** The State is correct to observe that there is no constitutional right to discovery in criminal cases. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845–46, 51 L.Ed.2d 30 (1977); *see also United States ex rel. Jones v. DeRobertis*, 766 F.2d 270, 274 (7th Cir.1985). However, where state statutes or rules do provide for criminal discovery, *Wardius* clearly requires, at least with respect to alibi rules, that such a procedure impose similar obligations and yield substantively similar information.

were not sufficient to demonstrate that the State's evidence falls short of being "overwhelming", also questionable is the eyewitness identification of Mauricio by Officer Lalone, who identified Arnold Mauricio as the individual he stopped from riding his snowmobile in the street. On cross-examination, however, Lalone admitted to having mistakenly identified Mauricio to his partner, at a time when Mauricio had been incarcerated, as a man emerging from the county office building.

The State attempts to minimize these weaknesses in its case by asserting that, although no one piece of evidence is sufficiently probative of Arnold Mauricio's guilt to warrant the conclusion that the jury would definitely have convicted him in the absence of Sharon McDonald's rebuttal testimony, the cumulative weight of the evidence does require such a conclusion. In addition to the testimony of the State's occurrence witnesses and the testimony of Officer Lalone, the State points to the following "inculpatory" evidence: (1) Arnold Mauricio was known to have been in the company of his brother Mark approximately seven hours prior to the time of the crimes charged; (2) Mark Mauricio admitted to owning a gun of the same caliber as the gun used to kill Nancy Rehm; and (3) a snowmobile matching the description of the one stolen from Nancy Rehm was found the day after her murder just one block from Arnold Mauricio's home. Although a jury confronted with the totality of the State's circumstantial evidence against Arnold Mauricio could view it as a satisfactory basis for finding him guilty, we are not sufficiently persuaded that the constitutional error complained of was harmless beyond a reasonable doubt. It is difficult to conceive of a more devastating revelation to a jury than that which occurred here. That an alibi was not only untrue but that it was planned by Mauricio's girlfriend and her mother, smacking as it does not only of wilfull perjury but possibly of conspiracy to suborn perjury, could not but have cast severe doubt on all other aspects of Mauricio's case.

Simply stated, absent McDonald's tainted rebuttal testimony, the State's case cannot fairly be described as "overwhelming", see *Savory, Shue* and *Burke;* and thus the district court erred in holding that the failure to disclose McDonald's identity constituted mere harmless error.

### IV.

In conclusion, although we agree with the district court that the State's failure to disclose the identity of Sharon McDonald violated Arnold Mauricio's right to a fundamentally fair trial and hence to due process of law, we disagree that that constitutional procedural error amounted to no more than harmless error. Accordingly, we grant the petition for a writ of habeas corpus unless the State of Indiana convenes a new trial of Mauricio within ninety days after this order becomes the final judgment of this court.

REVERSED AND REMANDED.