**Rex A. ASCHLIMAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 90A04–9006–CR–276.**

Court of Appeals of Indiana, Fourth District.

Sept. 25, 1991.

760

Linda M. Wagoner, Fort Wayne, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Rex A. Aschliman (Aschliman) appeals his conviction for Theft, a class D felony and his habitual offender determination. IND.CODE 35–43–4–2; 35–50–2–8.

We affirm.

Aschliman presents the following restated issues for our review:

1. whether sufficient evidence exists to prove every element of the crime of theft beyond a reasonable doubt;

2. whether the trial court erred in refusing Aschliman's instruction on the lesser included offense of criminal conversion;

3. whether the trial court erred in denying Aschliman's motion for change of prosecutor; motion for appointment of special prosecutor, and

4. whether the trial court erred in admitting State's Exhibit 5 over Aschliman's objection.

In June, 1989, Truman and Mary Lou Barger watched Aschliman pull into the Fiechters' driveway. Mr. Barger watched through binoculars as Aschliman walked first to the door of the Fiechters' home, then to the locked garage door which he unsuccessfully attempted to open. Aschliman next entered the screened-in porch, left, and went to the tool shed where the Fiechters stored their pry bar. Aschliman then returned and re-entered the screened-in porch and used the Fiechters' pry bar in his attempt to pry open the doors from the porch to the living area of the house. Mr. Barger then wrote down a description of Aschliman's car and his license number, and telephoned the Fiechters' home, to frighten Aschliman. Aschliman left the screened-in porch, threw the pry bar under a tree, and drove away. Mr. Barger found the pry bar, saw the damage to the doors, and then called the police.

Aschliman was originally charged with Burglary, a class B felony, amended by an Habitual Offender count. The charge was later amended to Attempted Burglary, instead of Burglary. Via a subsequent amendment, Theft (of the pry bar), a class D felony was added to the charges. The trial court directed a verdict in Aschliman's favor regarding Attempted Burglary. The jury then found Aschliman guilty of Theft and determined him to be an Habitual Offender. He was sentenced to two years on the theft charge with a 30 year enhancement for being adjudged an habitual offender. The court then suspended 5 years of the sentence. Aschliman appeals.

Additional facts as necessary will be provided below.

Aschliman first contends insufficient evidence supports his conviction. He maintains no evidence exists regarding his intent, an element of the offense of theft. Aschliman asserts although intent is commonly established by circumstantial evidence, in determining intent, "the trier of fact must resort to reasonable inferences based upon examination of the surrounding circumstances." Appellant's Brief, at 8. He further claims substantial evidence of probative value does not establish the element of intent and thus, no reasonable inference as to his intent is justified. Additionally, he argues the jury was confused over the issue of intent, as demonstrated by their question to the judge during deliberations.[1] Thus, he contends his conviction must be reversed. We disagree.

When presented with a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, 1265, *reh. denied, cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105. Instead, we consider only the evidence most favorable to the State. *Meredith v. State* (1987), Ind., 503 N.E.2d 880, 882. If there is substantial evidence to support the verdict, we will affirm the conviction. *Id.* True, the State has the burden of introducing sufficient evidence from which the jury can find the existence of each element of the offense beyond a reasonable doubt. *Montego v. State* (1987), Ind., 517 N.E.2d 74, 75. However, because intent is a mental state, the fact finder must generally resort to reasonable inferences from the surrounding circumstances to determine whether the requisite intent exists. *Id.; Anglin v. State* (1986), Ind., 490 N.E.2d 721, 723.

The statute under which Aschliman was charged for the crime of theft provides

---

1. During deliberations, the following written exchange occurred between the jury and the trial court:

Jury: As the law of Theft reads, if a person enters onto another person's property without permission and merely moves an object belonging to that person from one location to another (on the same property), is that person guilty of theft?

Court: You must rely on your written instructions. Read them again. I am not allowed to answer your questions specifically.

(R. 267–268).

(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony....

Here, Aschliman entered the tool shed where Mr. Fiechter kept the pry bar, returned and re-entered the screened-in porch, and used Fiechters' pry bar in his unsuccessful attempt to gain entry to the house. Aschliman then abandoned his attempt to gain entry, left the screened-in porch, and threw the pry bar into a weeded area under a tree before hurriedly leaving. Sufficient evidence yields the inference Aschliman intended to deprive the Fiechters of the use or value of their pry bar by his unauthorized control.

Next, Aschliman contends the trial court erred in refusing his tendered instruction on the lesser included offense of conversion. He maintains because conversion is a lesser included offense of theft and a "serious dispute" exists regarding whether he committed the element distinguishing the lesser crime from the greater, the trial court erred in refusing his instruction. Thus, he contends his conviction should be reversed and a new trial granted. We disagree.

Initially, we address the issue of waiver as presented by the State. The State contends Aschliman waived the issue pursuant to Ind.Appellate Rule 8.3(A)(7), for failing to set out the instruction verbatim in the argument section of his brief. Accordingly, any error in this issue may be deemed waived under our appellate rule. *Collier v. State* (1984), Ind., 470 N.E.2d 1340, 1343. However, Aschliman cites the specific pages in the record where the instruction appears, so we will consider this allegation of error. *Id.*

When determining whether an instruction was properly refused, we consider whether the instruction was a correct statement of the law, whether there was evidence in the record to support giving the instruction, and whether the substance of the tendered instruction was covered by other instructions given. *Avance v. State*

(1991), Ind., 567 N.E.2d 1149, 1151. The decision as to what instructions to give is within the discretion of trial court. *Id.*

Most recently, in *Holder v. State* (1991), Ind., 571 N.E.2d 1250, 1256, our supreme court reiterated the two-step test we must use to determine whether the trial court should have given an instruction on a lesser included offense. First, we determine whether the claimed lesser offense is either inherently or factually included in the language of the statute and the charging document. *Id.* at 9. Next, we examine the evidence to determine whether it warranted an instruction on the lesser offense. An instruction on the lesser offense was warranted if a serious evidentiary dispute existed respecting the element that distinguishes the greater from the lesser offense. *Id.*

The first step of the two is easily answered in Aschliman's favor. There is no question conversion is a lesser included offense of theft. The element distinguishing theft and criminal conversion is the intent to deprive, which is required for theft. *Moncrief v. State* (1988), Ind.App., 525 N.E.2d 1286, 1288. All other elements are the same. Thus, conversion is a lesser included offense of theft. *Id.* However, a defendant is not automatically entitled to an instruction on a lesser included offense. *Id.* The fact a lesser offense is included within the crime charged does not *ipso facto* entitle either the State or the defendant to an instruction on the lesser included offense. *Wojtowicz v. State* (1989), Ind., 545 N.E.2d 562, 563. It is well established a trial court may properly refuse to give a tendered instruction regarding included offenses when not supported by the evidence at trial. *Id.* Such is the present situation.

The bellwether discussion on this subject is found in *Roddy v. State* (1979), 182 Ind. App. 156, 394 N.E.2d 1098, *reh. denied.* In his noteworthy analysis, J. Staton explained in detail the use of the second prong of the test, relating to the evidence presented at trial.

Step two ... is designed to insure that the final instructions which are given to the jury conform to the issues and evidence before it. To guard against a violation of this long standing principle, the trial court examines that evidence which tends to prove or disprove the commission of the elements which compose the greater and lesser included offenses. Based on its examination, the trial court should instruct the jury on the lesser included offense only when it finds that there is "evidence of probative value from which the jury could properly find the defendant guilty of such lesser included offense."

We note that a literal application of the above-quoted test would in most cases require trial courts to instruct the jury on lesser offenses which were found to be "included" within charged offenses. By definition, a lesser included offense is composed of elements which comprise a portion of the greater offense. Consequently, that evidence which the State presents in support of the charged offense will usually indicate the commission of those elements which constitute the lesser included offense ... *The test is not so simple, however. A trial court should not give an instruction and form of verdict on a lesser included offense simply because the evidence indicates that the defendant committed the lesser offense in the process of the acts for which he or she was charged.* (Emphasis added).

To be sure, the evidence must establish the commission of the elements which comprise the lesser included offense in order for an instruction and form of verdict on that offense to go to the jury. However, the major focus of the evidentiary test is not on the elements of the lesser offense, but rather on the element(s) which distinguish(es) the offense charged from the lesser included offense. *If the evidence which indicates that the defendant did in fact commit the distinguishing element is uncontroverted, then the instruction on the lesser included offense should not be given to the jury.* If, however, ... evidence of probative value raises a "serious dispute" regarding whether the defendant in fact committed the distinguishing element(s), an instruction and form of verdict on the lesser included offenses should be given to the jury. (Emphasis added).

We emphasize that the Supreme Court's use of the expression "serious dispute" was not intended to suggest that the standard for determining when a jury should be instructed on a lesser offense is an arbitrary one. If a trial court was permitted to accept or refuse a tendered instruction upon the basis of its subjective appraisal of the seriousness of the dispute, it would be empowered to intrude upon the exclusive province of the jury to determine the facts. The expression "serious dispute" merely serves as a catch-phrase for the more explicit test utilized by the courts: *When there is any evidence of probative value, or a reasonable inference therefrom, that the defendant did not commit the distinguishing element(s), then the jury should be instructed on the lesser offense....* (Emphasis in Original).

\*    \*    \*    \*    \*    \*

The test employed in step two ... serves two significant purposes. First, it lessens the possibility of compromise verdicts between those jurors who believe the defendant guilty of the offense charged and those who believe him not guilty. It is axiomatic that if no dispute exists with regard to the elements which distinguish the greater offense from the lesser, the defendant is either guilty of the offense charged or not guilty of any offense. *Second, the test effectuates a strict application of the long-standing principle that an instruction upon an issue should not be given to the jury unless there is evidence to support it.* In other words, unless a serious dispute is raised regarding whether the defendant committed the distinguishing element(s), there is no indication that the defendant's culpability, if at all, is limited to the lesser offense. A jury verdict to

the effect that the defendant was guilty only of the lesser offense would simply be inconsistent with the evidence—and hence, an improper instruction. (Citation omitted). (Emphasis added).

*Roddy,* at 110–112.

In our examination of the evidence for the second step, we must focus on two questions: 1) whether there was probative evidence the lesser included offense was committed by the defendant; and 2) whether either affirmative evidence the charged offense was not committed or a lack of probative evidence the charged offense was committed was presented to the jury. *Wojtowicz, supra,* at 563. Further, if this examination reveals evidence both supporting the lesser included offense conviction and questioning the commission of the charged offense, an instruction on the lesser included offense is proper. *Id.*

A review of the relevant statutes, IC 35–43–4–2 and IC 35–43–4–3, reveals the distinguishing element of the two crimes is the intent to deprive, which is required for theft. The tendered but refused instruction states

CONVERSION

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor."

The elements of this crime are that the defendant must:

1. knowingly or intentionally
2. exert control over property
3. of another person
4. where the control is unauthorized.

(R. 254).

The charging information provides

COUNT II

That on or about the 4th day of June, 1989, at and in the County of Wells and in the State of Indiana said defendant did then and there knowingly exert unauthorized control over property of another person, to wit: a pry bar owned by Ken E. and Debra S. Fiechter, with *intent to deprive* the other person of any part of its value or use, all of which is contrary to the form of the statutes and in such cases made and provided, to wit: I.C. 35–43–4–2, and against the peace and dignity of the State of Indiana. (Emphasis added).

(R. 158). By careful drafting of the factual allegations of the information, the State may foreclose the availability of a lesser-included offense instruction. *Avance, supra,* at 1152. Here, the charging information clearly contemplates theft rather than criminal conversion.

We now turn to an examination of the evidence to determine whether it warranted an instruction on the lesser offense. An instruction on the lesser offense is warranted if a serious evidentiary dispute exists respecting the element that distinguishes theft from conversion, the intent to deprive. Just as the formation of the intent to kill and the killing may be as instantaneous as successive thoughts, *Castellanos v. State* (1985), Ind., 477 N.E.2d 279, 281; *May v. State* (1953), 232 Ind. 523, 112 N.E.2d 439, 440, so too with formation of the intent to deprive and the deprivation in the instant case.

Aschliman went into the Fiechters' tool shed where Mr. Fiechter kept his pry bar. Aschliman then returned to the house, entered the screened-in porch, and used the pry bar to try and gain entry into the living area of the house. When Mr. Barger telephoned to frighten Aschliman away, he did not drop the pry bar and flee. Instead, he left the screened-in porch area with the pry bar in hand, then threw it into a grassy area under a low hanging pine tree. The record shows Aschliman did not return the pry bar to its keeping place, did not leave it in the screened-in porch, or in any other conspicuous place. Any of these actions might have created a serious evidentiary dispute. Instead, he walked out of the screened-in porch with the pry bar in his possession before throwing it beneath the evergreen tree. Such evidence gives rise to a reasonable inference Aschliman intended to deprive the Fiechters of the use and benefit of their pry bar.

Further, the fact Aschliman discarded the pry bar does not aid his cause. His

retention of the "loot", coupled with his flight with it in his possession, albeit for a short while, is time enough for "one thought to follow another," i.e., to form the intent to deprive and consummate the deprivation. The trial court did not abuse its discretion because there was no serious evidentiary dispute on the subject of his intent or lack thereof. There is no probative evidence Aschliman acted without the intent to deprive. The *Roddy* second prong test demonstrates no lesser included offense instruction should have been given.

The trial court did not err in refusing Aschliman's tendered instruction.

Aschliman contends the trial court erred in denying his verified motion for change of prosecutor; motion for appointment of special prosecutor. Aschliman maintains the prosecutor filed the information for burglary, knowing the facts and case law did not support the charge. Next, Aschliman argues his complaint to the Disciplinary Commission and his filing of a federal law suit based upon the conduct of the same prosecutor in a prior case against Aschliman resulted in prosecutorial vindictiveness. Further, Aschliman cites to *State v. Selva* (1983), Ind.App., 444 N.E.2d 329, *reh. denied,* and maintains the information was amended pursuant to this vindictiveness. Thus, Aschliman contends the trial court erred in denying his request for a special prosecutor. We disagree.

IC 33–14–1–6 governs the appointment of special prosecutors. *Kindred v. State* (1988), Ind., 521 N.E.2d 320, 327. A prosecutor's apparent prejudice against a defendant does not satisfy the requirements for appointment of a special prosecutor. *Id.* To allow prosecutors to be disqualified merely upon the unilateral action of defendants, e.g., filing lawsuits, would lead to absurd consequences. *Id.*

IC 33–14–1–6 provides in relevant part

(b) A circuit or superior court judge:

(2) may appoint a special prosecutor if:

(A) a person files a verified petition requesting the appointment of a special prosecutor; and

(B) the court finds by clear and convincing evidence that the appointment is necessary to avoid an actual conflict of interest or there is probable cause to believe that the prosecutor has committed a crime; ...

■ Here, Aschliman's decision to file a complaint with the Disciplinary Commission as well as a federal lawsuit against the prosecutor were merely his unilateral actions. These were not supported by any judicial determination or independent confirmation. Thus, there was not "clear and convincing evidence that the appointment [was] necessary to avoid an actual conflict of interest." The trial court did not, therefore, err in denying Aschliman's request for a special prosecutor.

■ Furthermore, prosecutorial vindictiveness may be established if the prosecutor's charging decision was motivated by a desire to punish a person for doing what the law plainly allows him to do. *Jones v. State* (1989), Ind., 540 N.E.2d 1228, 1229. It is well settled the decision to prosecute or not to prosecute lies within the prosecutor's discretion so long as the prosecutor has probable cause to believe the accused committed an offense. *Neeley v. State* (1983), Ind., 457 N.E.2d 532, 534.

In *United States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74, the Supreme Court stated

In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized.... A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct.... the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

102 S.Ct. at 2492–2493.

■ Here, the initial information charging burglary was filed with probable cause.

(R. 62). The court's eventual determination the prosecutor failed to present a prima facie case because of lack of sufficient evidence on the issue of intent does not affect the initial determination. Secondly, the habitual offender charge was not filed vindictively. The prosecutor filed this charge two months prior to Aschliman's request for change of prosecutor, based upon the prosecutor's belief probable cause existed to show Aschliman had prior unrelated felony convictions. Finally, although the prosecutor amended the information to include the count of theft on August 28, 1989, subsequent to Aschliman's September 20, 1989, request for appointment of special prosecutor or change of prosecutor, Aschliman has shown no statutory violations by the prosecutor in this filing, nor has he shown a causal connection between the filing of his motion and the amended information. Aschliman failed to prove "the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do...." *Selva, supra,* at 331, *quoting United States v. Goodwin, supra.*

Moreover, the act constituting theft was different than the act constituting burglary, i.e. removing the pry bar from the tool shed differs from using the pry bar to attempt entry into the home to commit a felony. Thus, the trial court did not err in denying Aschliman's request for the appointment of a special prosecutor or change of prosecutor.

■ Aschliman next contends the trial court erred in admitting into evidence State's Exhibit 5, a sales receipt. Aschliman maintains the State failed to turn over the receipt pursuant to a discovery order. Thus, he contends, the State's failure to disclose this evidence violated his due process rights, requiring reversal of his conviction. We disagree.

Aschliman cites to *Mauricio v. Duckworth* (7th Cir.1988), 840 F.2d 454, *cert. denied* (1988), 488 U.S. 869, 109 S.Ct. 177, 102 L.Ed.2d 146, in support of his argument. In *Mauricio,* the defendant presented his alibi defense, after which the State called a rebuttal alibi witness, not listed on the State's witness list, who testified the alibi testimony was fabricated. The State had contacted the witness five months prior to trial but did not list the witness on its witness list. In reversing and remanding the district court's decision, the Seventh Circuit stated

> Thus, the plainly prejudicial effect of the prosecution's deliberate decision to omit the name of Sharon McDonald from its witness list requires that we do more than simply conclude that Mauricio should have resorted to the procedural remedy of seeking a continuance in what would have been a desperate attempt, apparent to the jury, to mitigate the damage inflicted by the devastating rebuttal testimony of the State's surprise witness.

840 F.2d at 459.

*Mauricio,* is however, distinguishable from the instant case. One week before the trial, Aschliman deposed Halligan, a possible witness listed by the State. Aschliman requested Halligan to bring the sales receipt to trial, as he believed it would lend credence to his alibi by showing Halligan was using her car to drive to and from the store, at the time Aschliman allegedly used it in commitment of the crime. Thus, it would be impossible for Aschliman to be the perpetrator. (Halligan allegedly made a prior statement claiming Aschliman could not have been using her car because she was using it at the same time and had a sales receipt to prove it.) Aschliman cross-examined Halligan concerning the prior statement, which Halligan denied, explaining her receipt listed the time as 1:57 p.m., rather than 11:57 a.m., making her use of the car harmful to his alibi defense. On redirect, the State introduced the receipt into evidence over Aschliman's objection it was not disclosed by the State in pretrial discovery.

The trial court did not abuse its discretion in admitting the sales receipt. Aschliman asked Halligan to bring the receipt to trial. Prior to the deposition, the State did not know of its existence. The State did not have control or possession of the receipt. The prosecutor did not attempt to

use the receipt until Aschliman brought the receipt into issue by questioning Halligan about her prior statement and the receipt. The exhibit was not a surprise to Aschliman. In fact, Aschliman was aware of its existence and could have compelled Halligan to produce it prior to trial if he felt it was necessary for pretrial preparation. Furthermore, Aschliman did not request a continuance, which would have been a likely remedial measure. *Long v. State* (1982), Ind.App., 431 N.E.2d 875, 877. Thus, the trial court did not err in admitting State's Exhibit 5 into evidence.

Affirmed.

CHEZEM, J. concurs.

GARRARD, J. dissents with separate opinion.

GARRARD, Judge, dissenting.

While I concur in the disposition of the other issues, I dissent to the determination that reversible error was not committed when the court refused to give Aschliman's tendered instruction on criminal conversion as a lesser included offense.

As the majority points out, the distinction between that offense and the crime of theft with which Aschliman was charged and convicted is the intent to deprive the owner of the value or use of the property required by the theft statute. *See* I.C. 35–43–4–2 and 3.

In the first step of analysis the majority concludes, and I agree, that conversion is a necessarily included offense because one cannot commit the crime of theft without necessarily committing all the elements of conversion. Having said that, it then appears to me that the majority's later reference to the prosecutor's choice of language in drafting the information is superfluous and potentially misleading. That line of analysis, which emanates from *Jones v. State* (1982), Ind., 438 N.E.2d 972 can logically only have application to instances where a lesser offense is not inherently (*i.e.*, necessarily) included but may nevertheless become factually included because of the facts alleged by the state in the charging information. An example of the latter situation would occur where one of the forms of battery becomes a lesser offense to robbery because its elements are factually alleged in the robbery information.

Where, however, the lesser offense is inherently included in the greater, the prosecutor cannot avoid charging it in the information. Without unnecessarily belaboring what is a nonissue in this case, it seems to me that this distinction should be clearly drawn regarding the first step analysis. To hold that because the prosecutor included in the information an allegation of the element which distinguishes the greater from the inherently included lesser offense he excluded the lesser offense from consideration, is to hold that the defendant will never be entitled to an instruction on any inherently included lesser offense. Of course, the prosecutor intends to charge the greater offense. That is the purpose of the information: to charge the most serious offense to which the state believes the defendant should be held to answer. But by definition when the state does so, it has also charged all inherently included lesser offenses. Thus, our review must then shift to the second step of the analysis because the first step is conclusively answered.

Under the second step we are to determine whether, under the evidence adduced at trial, the jury might reasonably determine that the lesser offense was committed while the greater one was not. The purpose of this review is to deter compromise verdicts. Thus, concern then focuses upon the element that distinguishes the greater from the lesser offenses. If that element was indisputably established by the evidence, a lesser offense instruction should be refused.

It seems to me that the next question for appellate review thus becomes: By what standard should we judge the sufficiency of the disputed nature of that distinguishing element? Indiana decisions supply some variations in the words employed, probably because the choice of term is not critical to the outcome in many of the cases. *See, e.g. Owens v. State* (1989) Ind., 544 N.E.2d 1375 (evidence of distinguishing

element "compelling and without serious conflict"); *Gordon v. State* (1986) Ind., 499 N.E.2d 228 (evidence of distinguishing element "clear"); *Wolfe v. State* (1978), 270 Ind. 81, 383 N.E.2d 317 (whether there was evidence to which the included offense instruction was applicable); *Roddy v. State* (1979), 182 Ind.App. 156, 394 N.E.2d 1098, 1111 (when there is any evidence of probative value, or a reasonable inference therefrom that the defendant did not commit the distinguishing element).

In *Beck v. Alabama* (1980) 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392, the Supreme Court considered Alabama's refusal to instruct on felony murder which did not carry the death penalty as a lesser included offense in a death penalty murder case. In reversing, the Court quoted with approval from its earlier decision in *Keeble v. United States* (1973), 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844:

> Moreover, it is no answer to a petitioner's demand for a jury instruction on a lesser offense to argue that a defendant may be better off without such an instruction. True, if the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal. But a defendant is entitled to a lesser offense instruction—in this context or any other—precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction.

Thus, the *Beck* Court determined that providing the jury with the "third option" of convicting on a lesser included offense ensures that the jury will accord the defendant the full benefit of the reasonable doubt standard.

While in *Beck* the Court expressly limited its decision to death penalty determinations, its reasoning underscores the concern for included offense instructions when they are appropriate to the facts in evidence.

The drafters of the Model Penal Code provided that the court should not be obligated to charge the jury with respect to an included offense "unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." ALI, Model Penal Code, § 1.07(5). It appears to me that this terminology captures the essence of our decisions, with the *caveat* that in close cases the jury is the constitutionally empowered body to determine the facts and is to do so beyond a reasonable doubt.

Turning to Aschliman's appeal, the facts disclose that he took a pry bar from the shed and then used it to attempt to pry open the door and enter the house. He clearly exerted unauthorized control of the pry bar since he used it without permission. When he was apparently frightened away from this endeavor, he discarded the pry bar by throwing it into the grass by an evergreen tree near the sidewalk.

I do not disagree with the majority's conclusion that this evidence would support a verdict of theft. It did not, however, so clearly establish his intent to deprive as to leave no rational basis for the jury to determine that he merely intended the unauthorized use of conversion had they been given the opportunity to do so. Had Aschliman carried the bar away with him and discarded it in some manner so that it would not likely be found be the owner, as by throwing it in a ditch or even leaving it by the road some distance away, there would, I agree, be no rational basis for saying that he did not intend to deprive the owner of the bar within the meaning of the theft statute, even though he did not wish to sell or keep the bar. On the facts before us, however, I must conclude that the court committed error by refusing the instruction.

I would reverse the conviction and remand for a new trial.