In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2979

Perry Steven Miller,

Petitioner-Appellant,

v.

Rondle Anderson,

Respondent-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 99 C 258--Allen Sharp, Judge.

Argued May 8, 2001--Decided June 29, 2001


  Before Posner, Easterbrook, and Ripple,
Circuit Judges.

  Posner, Circuit Judge. Miller was
convicted in an Indiana state court of
the rape, torture, and murder of a young
woman and was sentenced to death. After
exhausting his state remedies in Miller
v. State, 623 N.E.2d 403 (Ind. 1993), and
Miller v. State, 702 N.E.2d 1053 (Ind.
1998), he sought habeas corpus in federal
district court, it was denied, and he
appeals, arguing that his trial counsel
was ineffective and so he is entitled to
a new trial. The Indiana Supreme Court
ruled that Miller's counsel had not been
ineffective, and we must decide whether
the ruling was an unreasonable
application of federal constitutional law
as declared by the U.S. Supreme Court, 28
U.S.C. sec. 2254(d)(1); Williams v.
Taylor, 529 U.S. 362, 404-05 (2000);
Denny v. Gudmanson, No. 98-4275, 2001 WL
527626 at *2 (7th Cir. May 18, 2001);
Tenner v. Gilmore, 184 F.3d 608, 610,
614-16 (7th Cir. 1999); Mask v. McGinnis,
No. 99-2396, 2001 WL 568120 at *2 (2d
Cir. May 25, 2001) (per curiam)--
specifically whether the Indiana court
was unreasonable to reject Miller's claim
that his lawyer's representation of him
at trial fell below the minimum level of
competence required in the representation
of a criminal defendant and, if so,
whether with minimally competent
representation Miller would have had a

significant, not merely a theoretical, chance of acquittal.

The victim, who worked at an all-night convenience store, was seized late at night from the otherwise empty store, taken to a secluded spot, tortured, raped, and then killed by a shot from a shotgun at close range. There were no witnesses. Two teenagers, Wood and Harmon, who lived with Miller, were arrested the next day. Wood confessed, implicating both Harmon and Miller--the last, Wood stated, having orchestrated the entire atrocious crime, as well as participating in it, although Harmon had been the one who shot the victim. Wood testified against Miller at Miller's trial, pursuant to a plea agreementwhereby Wood's sentence was capped at 60 years. (Harmon, who was also prosecuted and convicted, did not testify at Miller's trial.) Wood's testimony was the centerpiece of the state's case, but it was not entirely satisfactory. It contained some contradictions; it had been induced, in part anyway, by the state's promise not to seek the death penalty for him; and despite his youth he was already an accomplished criminal when the rape and murder occurred. The state wanted corroboration and found it in the testimony of its expert witness that a pubic hair found on the victim's thigh almost certainly was Miller's. The prosecution harped on this evidence in closing argument. Miller's lawyer did not consult with a hair expert, let alone call one as a witness, but was content to cross-examine the state's expert. In the postconviction proceedings, however, new counsel for Miller retained a far more experienced hair expert than the state's and this expert testified that the hair was like the victim's hair and unlike Miller's. The prosecution at Miller's trial had also presented DNA evidence that it admitted was inconclusive and had not presented tire-tread and footprint evidence that it had said in opening argument it would present. Had Miller's lawyer called his own DNA, tiretread, and footprint experts, they would have testified not that the evidence was inconclusive but that it provided absolutely no basis for supposing Miller present at the scene of the crime.

Of course Miller's trial lawyer, even if he had searched conscientiously for

expert witnesses to testify about hair, DNA, tiretreads and footprints, might not have found experts that would give impressive testimony favorable to Miller, even if such experts existed. The fact that Miller's postconviction counsel was able to find a highly experienced hair expert to testify in Miller's favor doesn't mean that minimally competent trial counsel, shopping for an expert whom the court would appoint (since Miller could not afford to hire an expert in the market for high-priced expert witnesses), could have found as effective a witness to counter the prosecution's expert evidence. But the government makes nothing of this point; it is content to argue that Miller's lawyer was entitled to rely on cross-examination to undermine the prosecution's experts, and to make no effort to obtain his own experts. This argument would be convincing in some cases, but not in this one; cross-examination alone could weaken the prosecution's expert evidence, but not to the point of denying it the essential corroborative value for which the prosecutor was using it.

A hardware clerk testified that Miller had purchased shotgun shells the day before the murder. She based this testimony in part on her recollection of having received a check in Miller's name, and the state sought to corroborate her recollection by introducing a check and cash register record with the name "Miller" on it. The check was numbered 1204 and the witness testified that she was positive that "Miller 1204" was the defendant. In fact the check was from a different person, as Miller's lawyer would have discovered had he subpoenaed the bank's records from the bank. He did obtain Miller's copy of those records, which contained no trace of such a check; and while the prosecutor argued that Miller might have had another bank account on which he had written the check--an argument with no basis in the evidence--the prosecutor could have made the same argument had Miller's lawyer obtained bank records, since the lawyer could not have obtained the records of every bank in which Miller might have had another account. But only with the bank's records could the lawyer have shown that "Miller 1204" was a different Miller from the defendant.

The lawyer further failed to point out to the jury that while the clerk testified that she had sold Miller Remington shotgun shells, the shells found at the scene of the crime were of another make. The lawyer did elicit from Miller's wife testimony that Miller had not written the check; but since in closing argument the lawyer stated that Miller's wife would lie for him, the testimony was unlikely to have helped Miller--and incidentally that comment in closing argument demolished Miller's alibi defense, for which the sole evidence was his wife's testimony.

Most questionable of all the lawyer's fumbles was his decision to call a psychologist to testify that Miller was incapable of the kind of violence that had been perpetrated against the victim. The lawyer did this knowing that Miller had been previously convicted of kidnapping, rape, and sodomy and at the time of the crime for which he was being tried had been free on parole from a life sentence for kidnapping. The state brought these facts out on cross-examination of the psychologist and they not only destroyed the psychologist's credibility but almost certainly and perhaps decisively bolstered the jury's confidence in Miller's guilt. (The state had made no effort to place his prior convictions in evidence to demonstrate a modus operandi.) At the postconviction proceedings, the lawyer was unable to articulate a coherent reason for having put the psychologist on the stand, given the inevitability of the destruction of the psychologist and of Miller himself if the jury was told about the prior convictions. Nor did the Indiana courts give any reason for supposing it an even minimally intelligent tactic. The fact that it was a tactic obviously does not immunize it from review in a challenge to the lawyer's effectiveness. Tactics are the essence of the conduct of litigation; much scope must be allowed to counsel, but if no reason is or can be given for a tactic, the label "tactic" will not prevent it from being used as evidence of ineffective assistance of counsel. United States v. Zarnes, 33 F.3d 1454, 1473 (7th Cir. 1994); Jackson v. Roth, 24 F.3d 1002, 1004-05 (7th Cir. 1994); United States v. Booker, 981 F.2d 289, 295 (7th Cir. 1992); Wade v. Franzen, 678 F.2d 56, 58 (7th Cir. 1982); Kellogg v. Scurr, 741

F.2d 1099, 1102 (8th Cir. 1984).

Although the lawyer's conduct must be evaluated as a whole, United States v. Lindsay, 157 F.3d 532, 534-35 (7th Cir. 1998); Schiro v. Clark, 963 F.2d 962, 971 (7th Cir. 1992), aff'd on other grounds, 510 U.S. 222 (1994), since mistakes at some points in the trial might be redeemed by wise tactics at other points, there were no bright spots in his representation of Miller. His closing argument, for example, was a shambles, quite apart from the irresponsible and unhelpful suggestion that Miller's wife would lie for Miller under oath.

The clearest respect in which the lawyer's representation fell below the minimum level was the decision to put the psychologist on the stand, knowing what the lawyer knew. He also had no excuse for failing to inquire whether the defendant was "Miller 1204," since if he was not--and he was not--the clerk's testimony would be seriously undermined, given the great emphasis she placed on her recollection of the check. And, in the circumstances (an essential qualification), there was also no excuse for the lawyer's failure to consult experts on hair, DNA, treadmarks, and footprints. A defendant's lawyer does not have a duty in every case to consult experts even if the government is proposing to put on expert witnesses. United States v. Anderson, 61 F.3d 1290, 1298-99 (7th Cir. 1995); Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993). There may be no reason to question the validity of the government's proposed evidence or the evidence may be so weak that it can be demolished on cross-examination. But since Miller's defense was that he had not been at the scene of the crime, and he could not testify in opposition to Wood because to do so would enable the state to bring in the devastating evidence of his prior convictions, and the government was going to put great weight on expert evidence in order to bolster Wood's testimony, Miller's only chance was to establish so far as it was possible to do that there was no objective evidence placing him at the scene of the crime. A DNA expert and a treadmark and footprint expert would have so testified, and probably a hair expert more credible than the state's would have so testified as well because

the expert that Miller's new counsel found was far more qualified than the state's and, as we noted earlier, the state does not argue that Miller's postconviction expert was superior to the average expert that competent trial counsel might have found. In these circumstances, it was irresponsible of the lawyer not to consult experts. Wallace v. Stewart, 184 F.3d 1112, 1117 (9th Cir. 1999); Bean v. Calderon, 163 F.3d 1073, 1079 (9th Cir. 1998); cf. Strickland v. Washington, 466 U.S. 668, 690-91 (1984) (duty of reasonable investigation).

It remains only to consider whether Miller would have had a reasonable shot at acquittal had his lawyer been minimally competent. We think so. The minimally competent lawyer would have presented expert evidence that there was no physical evidence of Miller's presence at the crime scene, would have greatly undermined the hardware clerk's evidence, would not have undermined the alibi testimony of Miller's wife, would by forgoing psychological evidence (unlikely in any event to impress a jury) have kept the evidence of Miller's previous crimes from the jury, and would thus have forced the state to rely entirely on Wood's questionable testimony. The jury might have concluded that Wood was trying to save his life by portraying himself falsely as the tool of an older man. This is far from certain; indeed, we think the chance of an acquittal would still have been significantly less than 50 percent; but it would not have been a negligible chance, and that is enough to require us to conclude that the lawyer's errors of representation were, in the aggregate, prejudicial. Id. at 694; Washington v. Smith, 219 F.3d 620, 632-33 (7th Cir. 2000); Hernandez v. Cowan, 200 F.3d 995, 999-1000 (7th Cir. 2000); Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001).

The judgment is reversed with directions that the state either release Miller or retry him within 120 days. In addition, we are sending this opinion to the Indiana attorney disciplinary authorities for consideration of whether attorney Ronald V. Aungst's deficient representation of Miller at his trial warrants disciplinary proceedings.

Reversed.