# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1706

MICHAEL FLOYD,

*Petitioner-Appellant,*

v.

CRAIG A. HANKS, Superintendent,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 01 C 303—**Sarah Evans Barker**, *Judge.*

———————

ARGUED OCTOBER 28, 2003—DECIDED APRIL 1, 2004

———————

Before BAUER, POSNER, and WILLIAMS, *Circuit Judges.*

BAUER , *Circuit Judge.* This habeas corpus appeal comes to us following Michael Floyd's conviction for criminal confinement, rape and conspiracy to commit rape. He was sentenced to serve 110 years in prison. Floyd appeals on the basis of ineffective assistance of counsel and a violation of his due process rights. We affirm the ruling of the district court.

## I.  Background

On July 13, 1983 Lori Quackenbush was abducted at gunpoint when she left her place of work. Ron Deckard, her abductor, blindfolded, handcuffed and gagged Quackenbush, and drove her to a remote location where Deckard met with a second man who raped her. During the rape, Deckard continued to threaten her with the gun. After the rape, Deckard gave Quackenbush her car keys and allowed her to leave. She drove home, called the sheriff and underwent a medical exam to facilitate the collection of evidence.

Floyd was indicted for the rape of Quackenbush. At Floyd's trial, Deckard testified as to the details of the crime, stating that Floyd had committed the actual rape. Quackenbush also identified Floyd at trial, explaining that she had heard his voice during the assault, and recognized it from other conversations she had had with Floyd prior to July 13. Additional testimony against Floyd was presented by a polygraph examiner, the doctor who examined Quackenbush following the rape, the investigating officers, and a witness who could place Floyd with Deckard on the night in question.

In defense, Floyd testified that he did not participate in the crime, and that Deckard was lying. Floyd was convicted and sentenced to 110 years in prison.

Floyd now complains that he was denied effective assistance of counsel during trial. Specifically, he believes his attorney erred by failing to introduce a serology report, failing to introduce the examining doctor's notes concerning Quackenbush, not using Floyd's mother as an alibi witness, and not cross-examining witnesses who appeared for the sentencing portion of Floyd's trial. Floyd also complains that the prosecution violated his due process rights by failing to list a rebuttal witness who would contradict Floyd's alibi defense.

## II.  Analysis

We review this habeas appeal under the guidelines in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The writ will not issue unless Floyd can show that the state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence . . . ." 28 U.S.C. § 2254(d).

This is a difficult standard to meet; the Supreme Court has noted that "unreasonable" means more than merely an incorrect or erroneous application of law. *Wiggins v. Smith*, 123 S. Ct. 2527, 2529 (2003).

### A.  Ineffective Assistance of Counsel

Floyd asserts that he was denied his Sixth Amendment Right to effective assistance of counsel during his trial. Under the *Strickland* test, Floyd must show: first, that his attorney's performance was "deficient" and, second, that the deficient performance resulted in "prejudice." *Strickland v. Washington*, 466 U.S. 668, 688-91 (1984). Generally, to demonstrate prejudice, an appellant must show a "reasonable probability" that, absent the errors, the result of the trial would have been different. *Id.* at 694. The attorney's errors are considered both individually and collectively for prejudice. *Id.* at 696. On a habeas appeal, we look at this test not directly, but rather ask whether the lower court made a reasonable application of this law to the facts of the case.

### 1.  Serology Lab Report

Floyd complained of several attorney errors. The first concerns FBI lab results on serology samples taken from

the victim following the attack. Five of the six samples taken were inconclusive, but one sample matched that of a person with blood type A. Floyd is of blood type O. Although Floyd's attorney was in possession of the lab results at the time of trial, he did not use them in Floyd's defense. The Indiana Court of Appeals noted that in light of the overwhelming evidence presented against Floyd, the lab reports would not have had a reasonable probability of changing the outcome of the trial.[1] Such analysis is not unreasonable, given that five of the six samples did not rule out Floyd, and the one type A result could be explained by the fact that Quackenbush had intercourse with her boyfriend (who is blood type A) two days before the attack.

Floyd counters this, citing to a case where we found a defense attorney's performance deficient when he failed to investigate similar evidence. *See Miller v. Anderson*, 255 F.3d 455 (7th Cir. 2001) (discussing counsel's failure to investigate expert testimony regarding pubic hair). In *Miller* we applied both prongs of the *Strickland* test and found counsel to have given deficient performance that resulted in prejudice. While this case may present a similar case in a search for deficient performance, it does not compare for

---

[1] Specifically, the appeals court stated,

> The lengthy record reveals that at trial the victim identified Floyd as the perpetrator of this crime; Floyd's co-defendant identified him and testified against him; a polygraph examiner testified that Floyed failed a polygraph examination; and a witness testified that she saw Floyd driving in downtown Bedford when he claims he was returning home from driving Deckard home. Moreover, in his brief, Floyd acknowledges that the same report he claims counsel failed to use at trial as exculpatory evidence also contained evidence that the State could have claimed was inculpatory had defense counsel attempted to admit the report.

*Floyd v. State of Indiana*, No. 47A04-9507-PC-267, slip op. at 5 (Ind. Ct. App. Sept. 30, 1999).

prejudice. Here, the Indiana Court of Appeals started and ended its analysis of this issue by finding there was no prejudice; it did not rule that counsel's failure to present the serology report constituted deficient performance. In *Miller*, the prosecution used the evidence at trial to implicate the defendant; the evidence was critical to the defendant's conviction.[2] Here, neither side presented the serology lab reports at trial, and even if Floyd's attorney had relied on them, the results were, at best, inconclusive—they did not exonerate the defendant.

### 2. Victim's Inconsistent Statements

The second error that Floyd complains of is that his attorney did not introduce evidence of statements that the victim made to her medical examiner. Floyd believes that these statements were inconsistent with Quackenbush's testimony at trial when she said that she identified Floyd by his voice during her abduction. The statements, recorded in Dr. Gareth Morgan's notes say, among other things, "She was raped by the man from the accompanying car[;] *he didn't speak* but prior to and during the intercourse she was told what to do by the first man with the gun." The notes also say, "[s]he could see the headlights of a car stopped behind them and *heard a muffled conversation.*" (Br. for Appellee at 17) (emphasis added to reflect Floyd's argument). The appellate court found that Quackenbush's testimony at trial was thorough and extensive enough that

---

[2] We noted that,

> Wood's testimony was the centerpiece of the state's case, but it . . . contained some contradictions. . . . The state wanted corroboration and found it in the testimony of its expert witness that a pubic hair found on the victim's thigh almost certainly was Miller's. The prosecution harped on this evidence in closing argument.

*Miller v. Anderson*, 255 F.3d 455, 457 (7th Cir. 2001).

the doctor's notes would have made little difference to the jury. Additionally, the appellate court noted the testimony of other witnesses at trial indicating Floyd was the per-petrator. We believe that the appellate court was not unreasonable in finding that the use of the doctor's notes would not have created a reasonable probability of a dif-ferent outcome; there was no prejudice.

### 3. Testimony of Floyd's Mother

Third, Floyd believes that it was error not to have his mother testify in support of his alibi. During trial a separ-ation of witness order was in effect. Floyd's mother was present in the courtroom; later Floyd's attorney made a motion to have her removed from the courtroom so that she could testify, the prosecution objected and the court denied the motion. Had she been able to testify, she would have told the court that she had seen her son asleep in his bed at the time of the crime. The appellate court found that having Floyd's mother sit in the courtroom using her as a show of family support rather than as a witness, was a permissible tactical decision and hence, was not deficient performance regardless of the attorney's later wish to call her as a witness. *See Strickland*, 466 U.S. at 689 (noting that attorneys have "wide latitude . . . in making tactical deci-sions" and "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Floyd counters that his attorney did not make a tactical decision because he had originally listed Floyd's mother as an alibi witness, so the attorney could not later change his mind. We find that the appellate court did not unreasonably apply *Strickland* in this part of its analysis and the attorney's actions were not deficient. Additionally, when considered with the other attorney's errors that Floyd complains of, the appellate court found that there was no prejudice.

### 4. Sentencing

Lastly, Floyd complains that his attorney did not cross-examine two witnesses during sentencing. These witnesses testified that Floyd had subjected them to a similar crime involving abduction and rape. In response to this testimony, Floyd's attorney introduced into evidence a newspaper account of the witnesses' attack that described the attacker to be unlike Floyd. The appellate court also concluded that this too was a strategic decision on the part of counsel. In coming to that conclusion, the court considered the testimony of Floyd's attorney where he stated that he did not object to or cross-examine these witnesses because he wanted to prevent "a second rape trial" without "constitutional protections." Floyd's attorney was concerned that Floyd would later be formally charged with this second rape, and did not want Floyd making statements at this sentencing proceeding that could be later used against him. Applying the same standards as above, we find that the appellate court did not make an unreasonable application of *Strickland* or an unreasonable interpretation of the facts.

### 5. General Prejudice Analysis

In addition to his arguments that the Indiana Appellate Court made "unreasonable" applications of the law, Floyd also argues that the court's decision was "contrary to" existing law. In hearing Floyd's appeal, the Indiana Court of Appeals identified and applied the *Strickland* test. Floyd objects to the fact that in discussing the prejudice prong of the test, the court referenced a "reliable" standard that is no longer part of the test. Specifically, at the beginning of its opinion, the court discusses that when errors do not make the result of the trial unreliable, they do not cause

prejudice.[3] While we agree with Floyd that *Williams v. Taylor*, 529 U.S. 362 (2000) removed the discussion of reliability from determining whether there was prejudice, a fuller view of the appellate court's discussion reveals that while the term "reliability" was employed, the actual analysis of Floyd's counsel's conduct properly considered whether the counsel's actions affected the outcome of the trial. As noted above, the Indiana Appellate Court considered the potential effect of the lab results, the victim's statements to her doctor, Floyd's mother's testimony, and a cross-examination of the witnesses at sentencing against the weight of the other evidence heard by the jury.[4] In reaching its decision that there was no prejudice, the court found that the inculpating evidence was overwhelming and had Floyd's counsel taken the steps that Floyd now demands, the result would have been the same; this is the very analysis that is required by *Strickland* and *Williams*.[5] The Supreme Court has explained that a decision is "contrary to" precedent when "the state court applies a rule that contradicts the governing law." *Williams*, 529 U.S. at 405. Floyd fails in this argument precisely because when it

---

[3] In discussing the application of the prejudice part of the test, at one point the Indiana Appellate Court noted, "To establish the second element, the defendant must show that counsel's errors so undermined the proper functioning of the adversarial process that the trial cannot be said to have produced a just and reliable result. Thus, a different outcome but for counsel's errors will not constitute prejudice if the ultimate result reached was fair and reliable." *Floyd v. State*, No. 47A04-9507-PC-267, slip op. at *23 (Ind. App. Ct. Sept. 30, 1999) (internal citations omitted).

[4] Br. for Appellant at app. 24, 26.

[5] *Strickland v. Washington*, 466 U.S. 668 (1984) ("With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."); *Williams v. Taylor*, 529 U.S. 362 (2000) (same).

*applied* the *Strickland* test, the Indiana Court of Appeals did it in conformance with the proper *Strickland* standard.

### B. Due Process/Rebuttal Witness

At trial, the prosecution produced Cheryl Hardin to testify that she had seen Floyd with Deckard on the night in question to rebut Floyd's alibi. Prior to trial the prosecution had failed to disclose this witness; we have held that when the defendant must disclose a list of its witnesses during discovery, the prosecution must do the same. *Mauricio v. Duckworth*, 840 F.2d 454, 457 (7th Cir. 1988). The rationale behind this rule is to have discovery procedures applied "evenhandedly" to both the defense and prosecution. When faced with this problem, we apply a two-part test: first, did the state knowingly fail to divulge the identity of a potential alibi rebuttal witness, and second, if so, was the constitutional violation harmless? *Id.* at 456-57.

From the facts, it appears that the state did indeed know of this potential witness and did not disclose her identity to the defense prior to trial. The Indiana Supreme Court found that Hardin's testimony was cumulative, however, and did not amount to harmful error. *Floyd v. State*, 503 N.E.2d 390, 394 (Ind. 1987). We agree with this finding. The purpose of Hardin's testimony was to place Floyd with Deckard on the night in question, the prosecution had already done so with the testimony of Deckard and Quackenbush. Hardin's testimony was merely cumulative.

For the aforementioned reasons, we AFFIRM.

WILLIAMS, *Circuit Judge*, concurring.   While I agree that the law compels this result, I note how unfortunately stringent the habeas standards of review are, often producing affirmance of even draconian results. Here for instance, Floyd was sentenced to 110 years, and his co-conspirator received 30 years and has since been released from prison. Accordingly, I reluctantly concur.

A true Copy:

     Teste:

                        _____
                     *Clerk of the United States Court of*
                         *Appeals for the Seventh Circuit*